[809 NYS2d 142]

In the Matter of GEORGE J. COTZ (Admitted as GEORGE JOSEPH COTZ), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, January 31, 2006

**APPEARANCES OF COUNSEL**

*Gary L. Casella,* White Plains (*Antonia Cipollone* of counsel), for petitioner.

*Hinshaw & Culbertson LLP*, New York City (*Hal R. Lieberman* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

The respondent was suspended by order of the Supreme Court of the State of New Jersey dated March 22, 2005 (*Matter of Cotz*, 183 NJ 23, 869 A2d 877 [2005]), for a period of six months, effective April 22, 2005, and pending further order of that court, for violating New Jersey Rules of Professional Conduct 1.15 (a) (negligent misappropriation of trust funds) and (d) (record-keeping violations) and 1.8 (conflict of interest).

The order of the Supreme Court of the State of New Jersey was based upon the decision of the New Jersey Disciplinary Review Board, dated December 14, 2004.

The four-count complaint filed by the New Jersey Office of Attorney Ethics (OAE) charged the respondent with knowing misappropriation of client funds, conflict of interest by borrowing money from clients, breach of an escrow agreement, and record-keeping improprieties. The special master allowed an amendment to the complaint to include charges involving candor towards a tribunal, fairness to the opposing party and counsel, and conduct involving dishonesty, fraud, deceit, or misrepresentation. The respondent was admitted to the New Jersey state bar in 1974 and has no prior disciplinary history.

The respondent admitted that he borrowed funds from clients without following the required safeguards and that he violated record-keeping rules. He denied the remaining allegations.

In his February 19, 1999, reply to a request by the OAE for an explanation of a checking-account overdraft, the respondent admitted that he had issued a trust account check knowing that he lacked sufficient funds in that account. This prompted a demand audit of the respondent's books and records for which the respondent submitted the requested documents.

On August 11, 1998, the respondent borrowed $75,000 from an attorney friend, Donald Reeder, for a down payment on the purchase of a house. The respondent deposited that sum into his business account. Although that purchase was never completed, Reeder allowed the respondent to retain the funds while he looked for another house. The respondent withdrew approximately $12,000 of those funds to satisfy unrelated obligations.

On September 28, 1998, the respondent contracted to buy another house and issued a check drawn on his business account for the $63,000 down payment knowing that his balance in that account was only $37,444.47. The respondent issued a check for $28,000 drawn on his trust account and deposited that into the business account to cover the shortage. According to the respondent, the $28,000 represented moneys collected by him on behalf of his client, Frank Gallo, who had orally authorized the respondent to borrow any funds collected on his behalf. During the investigation, Mr. Gallo's daughter confirmed that her father, who was 90 years old and residing in Florida, authorized the loan and did not wish to participate in the ethics matter. The OAE's investigation revealed that at the time the respondent issued the $28,000 check, his trust account had a deficiency of approximately $18,766.33.

Three days after the respondent issued the $63,000 down payment check, Reeder informed the respondent that he was having second thoughts about the loan and asked the respondent to return the money to him. At the same time the respondent decided that he could not afford to buy the house. He therefore issued a $63,000 check from his business account and deposited it into his trust account in order to restore the trust account to its proper level. That check cleared, but the $63,000 check previously issued from the business account as a down payment on the house was returned for insufficient funds.

To placate Reeder, the respondent issued him a $75,000 check from the trust account. That check was returned for insufficient funds and the overdraft prompted the respondent's bank to contact the OAE. Inasmuch as the check was never cashed, it did not cause an invasion of clients' funds. On October 7, 1998, after Reeder called the respondent about the returned check, the respondent gave him a $65,000 cashier's check from his trust account as a partial repayment. The respondent believed that he had retained a residue of earned fees in the trust account which would help to cover the check.

During 1998 and 1999, the respondent borrowed trust funds from four clients without documenting the loans, obtaining the clients' written consent, or advising them to seek independent counsel. After receiving the OAE's letter about the overdraft, the respondent discovered an $8,000 shortage in his trust account.

In addition to his law practice, the respondent had substantial family responsibilities in 1998, the year in which the misappro-

priation occurred. As a result of his obligations to clients and his family, the respondent began to feel overwhelmed and his record keeping suffered. He did not enter information in his trust account checkbook, did not maintain a running balance in his checkbook or a trust receipts or disbursements journal, and did not reconcile his trust account. Nor did the respondent maintain written records of the sums he borrowed from Gallo, relying solely on his memory.

The Grievance Committee served the respondent with a notice pursuant to 22 NYCRR 691.3 informing him of his right to file a verified statement setting forth certain enumerated defenses to the imposition of reciprocal discipline within 20 days of service upon him of the notice.

The respondent submitted a verified statement opposing the imposition of a reciprocal six-month suspension in New York on the ground that it would be manifestly unjust. The respondent has taken control of his accounts since 1998. He now employs a full-time secretary, follows proper record-keeping procedures, and reconciles his accounts on a monthly basis. In addition, the respondent took an accounting course in 2003 and recently stopped taking on new collection cases, making his bookkeeping much easier. The respondent has not demanded a hearing with respect to the defense raised in the belief that the issue of an appropriate sanction to be imposed by the Court could be decided on the papers, sparing the time and expense of a hearing.

Notwithstanding the respondent's lack of venality, his widespread practice of improperly borrowing money from clients without keeping written records of the amounts borrowed and repaid warrants a period of suspension. Accordingly, the respondent is suspended from the practice of law in New York for a period of six months based upon the discipline imposed upon him in New Jersey.

PRUDENTI, P.J., FLORIO, H. MILLER, SCHMIDT and ADAMS, JJ., concur.

Ordered that the petitioner's motion is granted; and it is further,

Ordered that pursuant to 22 NYCRR 691.3, the respondent, George J. Cotz, admitted as George Joseph Cotz, is suspended for a period of six months, commencing February 24, 2006, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement upon furnishing sat-

isfactory proof that during the said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provision of this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable provisions of 22 NYCRR 691.11 (c), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, George J. Cotz, admitted as George Joseph Cotz, is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, George J. Cotz, admitted as George Joseph Cotz, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).